JOSEPH MONTI AND TITA MONTI, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Monti v. Commissioner
Docket No. 2368-88
United States Tax Court
T.C. Memo 1995-73; 1995 Tax Ct. Memo LEXIS 74; 69 T.C.M. (CCH) 1907; February 15, 1995, Filed *74 For petitioners: John W. Hughes. For respondent: Marcie B. Harrison. SWIFT
SWIFT
MEMORANDUM OPINION SWIFT, Judge: This matter is before the Court under Rule 121 on petitioners' motion for summary judgment and on respondent's cross-motion for partial summary judgment. Unless otherwise indicated, all Rule references are to the Tax Court Rules of Practice and Procedure, and all section references are to the Internal Revenue Code as in effect for 1982. At the time the petition was filed, petitioners resided in Sands Point, New York. All references to petitioner in the singular are to Joseph Monti. The sole issue presented in the instant motions for summary judgment is whether petitioners and respondent entered into a valid consent to extend the period of limitation for assessment of petitioners' income tax for 1982. During 1982, petitioner owned limited partnership interests in several limited partnerships including: (1) White Rim Oil and Gas Associates (1979); (2) White Rim Oil and Gas Associates (1980); (3) Oppenheimer Leasing Partners (1981-1); and (4) Control Data Ltd. Partnership. On May 20, 1983, pursuant to an extension of time, petitioners timely filed with respondent *75 their 1982 joint Federal income tax return. In December of 1985, respondent mailed to petitioners a Form 872-A, Special Consent to Extend the Time to Assess Tax. Under the terms of this Form 872-A, as prepared by respondent, adjustments that respondent would have been authorized to make during the extended period of limitation would not have been limited to any particular adjustments or investments, and the period during which respondent, under section 6501(a), would have been authorized to assess a deficiency in petitioners' Federal income tax for 1982 would have been extended indefinitely. Petitioners did not sign the above Form 872-A as prepared and mailed to them by respondent. Rather, by letter dated January 9, 1986, petitioners' counsel informed respondent that petitioners would agree to extend the period of limitation for 1982 with regard only to their investment in White Rim Oil and Gas Associates (1979) and only until December 31, 1987. Petitioners' counsel prepared and mailed to respondent with the January 9, 1986, letter a revised, unsigned Form 872 (Petitioners' Form 872, Consent to Extend Time to Assess Tax) that conformed with the proposal indicated in his January *76 9, 1986, letter (namely, the extension would be effective only with regard to adjustments relating to petitioners' investment in White Rim Oil and Gas Associates (1979), and the extension would extend the period of limitation for 1982 only until December 31, 1987). In his January 9, 1986, letter to respondent, petitioners' counsel requested that respondent's representative sign and return to petitioners' counsel a copy of Petitioners' Form 872 so that it could be signed by petitioners. Respondent's representative did not sign Petitioners' Form 872. Rather, on January 23, 1986, respondent's representative prepared and mailed to petitioners an unsigned Form 872 (Respondent's First Form 872) that differed materially both from the Form 872-A that respondent had initially proposed and from Petitioners' Form 872. In Respondent's First Form 872: (1) The extension of the period of limitation on assessment for 1982 would apply to adjustments relating to petitioners' investment not only in White Rim Oil & Gas Associates (1979) but also to petitioners' investments in White Rim Oil & Gas Associates (1980) and Oppenheimer Leasing Partners (1981-1); and (2) the date to which the period of limitation *77 for 1982 would be extended was indicated as December 31, 1982. A handwritten notation of respondent's representative on the January 23, 1986, cover letter that respondent mailed to petitioners along with Respondent's First Form 872 indicated that Respondent's First Form 872 was being mailed to petitioners as a "Restricted waiver per your request!", erroneously suggesting that Respondent's First Form 872 conformed to the request of petitioners' counsel (which it did not because it was not limited to adjustments relating to petitioners' investment in White Rim Oil & Gas Associates (1979) and because of the December 31, 1982, date indicated for expiration of the period of limitation). On January 28, 1986, petitioners signed Respondent's First Form 872 without making any change thereto, and petitioners' counsel mailed back to respondent Respondent's First Form 872. On March 4, 1986, respondent prepared and mailed to petitioners a cover letter and a second, unsigned Form 872 (Respondent's Second Form 872) that differed materially from the terms of Respondent's First Form 872 in two respects: (1) The extension proposed in Respondent's Second Form 872 would apply to adjustments relating *78 to petitioners' investments not only in White Rim Oil & Gas Associates (1979), White Rim Oil & Gas Associates (1980), and Oppenheimer Leasing Partners (1981-1), but also to petitioners' investment in a fourth partnership (namely, Control Data Ltd. Partnership); and (2) the date to which the period of limitation for 1982 would be extended was indicated as December 31, 1987. In the first paragraph of the March 4, 1986, cover letter to petitioners enclosing Respondent's Second Form 872, respondent indicated the reason for the letter and for Respondent's Second Form 872 as follows: "The limitation period prescribed by law for assessing additional tax [for 1982] is due to expire soon". A handwritten notation of respondent's representative on the March 4, 1986, cover letter indicated that Respondent's Second Form 872 was being mailed to petitioners as a "Restricted waiver per your request!", again erroneously suggesting that Respondent's Second Form 872 conformed to the request of petitioners' counsel (which it did not because it was not limited to adjustments relating to petitioners' investment in White Rim Oil & Gas Associates (1979)). Petitioners did not sign Respondent's Second *79 Form 872. On March 8, 1986, just 4 days after mailing to petitioners Respondent's Second Form 872, an authorized representative of respondent signed Respondent's First Form 872 that petitioners had signed and mailed back to respondent on January 28, 1986. On March 10, 1986, respondent mailed to petitioners a copy of Respondent's First Form 872, that had been signed by respondent's representative on March 8, 1986, but on this copy of Respondent's First Form 872 the indicated December 31, 1982, expiration date of the period of limitation for 1982 was altered or changed by respondent's representative to read December 31, 1987 (Respondent's Altered Form 872). In a cover letter to petitioners dated March 10, 1986, enclosing a copy of respondent's Altered Form 872, respondent erroneously indicated that Respondent's Altered Form 872 was the same form as Respondent's First Form 872 that had been signed by petitioners, and the cover letter did not disclose to petitioners that the form had been altered by respondent's representative. Further, in the space provided on respondent's March 10, 1986, cover letter for respondent to indicate the date to which the period of limitation for *80 1982 would be extended, respondent entered nothing. That space was left blank. The evidence does not indicate which representative within respondent's office made the above alteration on Respondent's First Form 872, nor does the evidence indicate whether the alteration was made before or after respondent's authorized representative signed Respondent's First Form 872 on March 8, 1986. Respondent, however, admits that no one on behalf of respondent contacted petitioners or petitioners' counsel to request authorization to make the above alteration on Respondent's First Form 872. On December 28, 1987, respondent mailed to petitioners a notice of deficiency for 1982, in which notice respondent disallowed certain losses claimed by petitioners with regard to petitioner's limited partnership investments in White Rim Oil & Gas Associates (1979), White Rim Oil & Gas Associates (1980), and Oppenheimer Leasing Partners (1981-1). Because petitioners filed their 1982 joint Federal income tax return on May 20, 1983, absent a valid extension of the period of limitation on assessment with regard to petitioners' Federal income tax liability for 1982, the normal 3-year period of limitation on assessment *81 expired on May 20, 1986, making respondent's December 28, 1987, notice of deficiency untimely. We, therefore, must decide whether Respondent's Altered Form 872 constitutes a valid extension to December 31, 1987, of the period of limitation with regard to petitioners' Federal income tax liability for 1982. Summary judgment is appropriate where the record shows that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law. Rule 121(b); Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986); Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), affd. 17 F.3d 965 (7th Cir. 1994); Marshall v. Commissioner, 85 T.C. 267, 271 (1985). Respondent states and acknowledges that she has no additional facts to offer that would shed light on or explain further either the reason for, or the manner by which, the mistakes and alterations were made on the various Forms 872 and associated cover letters that respondent's representatives prepared and mailed to petitioners. Both parties state that there are no further facts to offer *82 into evidence, and both parties seek resolution of the issue before us by summary judgment. Under section 6501(a), respondent must generally assess an income tax deficiency within 3 years after the taxpayer's tax return was filed. Respondent may, however, assess income taxes later than 3 years after the return was filed where the taxpayer has consented in writing to an extension of the period of limitation and where the extension extends the expiration date of the period of limitation to a date beyond the date on which respondent issues her notice of deficiency. Sec. 6501(c)(4). Consents to extend the period of limitation for assessment are essentially unilateral waivers of a defense by taxpayers and do not constitute contracts. Stange v. United States, 282 U.S. 270 (1931); Woods v. Commissioner, 92 T.C. 776, 780 (1989); Piarulle v. Commissioner, 80 T.C. 1035, 1042 (1983); Tallal v. Commissioner, 77 T.C. 1291 (1981). Contract principles are significant, however, because section 6501(c)(4) requires that taxpayers and respondent enter into a written consent *83 or agreement to extend the period of limitation. Piarulle v. Commissioner, supra at 1042. Particularly important to the resolution of this issue in this case is the principle that "It is the objective manifestation of mutual assent as evidenced by the parties' overt acts that determines whether the parties have made an agreement." Woods v. Commissioner, supra at 780; see also Kronish v. Commissioner, 90 T.C. 684, 693 (1988). If respondent, after a consent form has been signed by the taxpayer and without obtaining authorization from the taxpayer, alters a consent form, and if such alteration materially alters the terms of the intended agreement, such a consent form generally will not be recognized and will not extend the period of limitation. Piarulle v. Commissioner, supra at 1043; Cary v. Commissioner, 48 T.C. 754, 766 (1967); Cannon v. Commissioner, T.C. Memo. 1990-410; see also Kronish v. Commissioner, supra at 694. Such an alteration by respondent, *84 however, will not invalidate a consent to extend the period of limitation if, subsequent to the taxpayer's signing the consent form, the taxpayer plainly and unambiguously consents to the alteration. Cary v. Commissioner, supra at 761-762. A taxpayer may be estopped from denying the validity of a written consent form containing an error in drafting if the taxpayer knew of the error, if the taxpayer was wrongfully silent regarding the error, and if respondent reasonably relied on the validity of the consent form containing the error. Piarulle v. Commissioner, supra at 1043-1044; see also Kronish v. Commissioner, supra at 695. If, however, respondent becomes aware of the error and without obtaining written authorization from the taxpayer, alters the consent form at a point in time when the period of limitation was still open, and if respondent, at that point in time, had adequate time to request authorization from the taxpayer to correct the error, the taxpayer generally will not be estopped from denying the validity of the consent form. Piarulle v. Commissioner, supra at 1047; *85 Cary v. Commissioner, supra at 766. "The IRS is an arm of government with authority to subject citizens to the burdens of litigation. With this authority comes a responsibility to be careful." United States v. Hodgekins, 28 F.3d 610, 614 (7th Cir. 1994). Where an error occurs and where respondent timely discovers such error, respondent's policy is to send a corrected version of the consent form to, and to obtain proper consent from, the taxpayer. See Durgin v. Commissioner, T.C. Memo. 1992-656; Buchine v. Commissioner, T.C. Memo. 1992-36, affd. 20 F.3d 173 (5th Cir. 1994). Where respondent's alteration of a consent form does not alter the agreement of the parties but only corrects a scrivener's mistake in the consent form, the Court may reform the consent form to conform it to the actual intent and agreement of the parties. Woods v. Commissioner, supra at 782-783. Respondent argues that respondent's alteration of Respondent's First Form 872, which alteration created Respondent's Altered *86 Form 872, was allegedly made with petitioners' implied consent and therefore that Respondent's Altered Form 872 should be regarded as valid. Petitioners argue that Cary v. Commissioner, supra, and Piarulle v. Commissioner, supra, apply in this case and that Respondent's Altered Form 872 is not a valid consent extending the period of limitation. We agree with petitioners. Although petitioners' counsel's cover letter of January 9, 1986, proposed to extend to December 31, 1987, the period of limitation for assessment applicable to petitioners for 1982, that letter referred to Petitioners' Form 872, not to Respondent's Altered Form 872. Petitioners' Form 872 would have extended the period of limitation for 1982 only with regard to one limited partnership. Respondent's Altered Form 872 proposed to extend the period of limitation for 1982 with regard to three limited partnerships. The reference in Petitioners' Form 872 and in Respondent's Altered Form 872 to different partnerships constitutes a material difference. Any consent that may be implied in Petitioners' Form 872 regarding the period of limitation for 1982 *87 is not properly imputed to Respondent's Altered Form 872. See Piarulle v. Commissioner, supra at 1043-1044. Applying Cary v. Commissioner, 48 T.C. 754 (1967), and other similar cases to the facts of this case, we conclude that because respondent altered Respondent's First Form 872 without obtaining authorization or consent from petitioners, and because respondent (in Respondent's First Form 872 and in Respondent's Altered Form 872) proposed a consent form materially different from that which petitioners had proposed (in Petitioners' Form 872), respondent cannot complain that petitioners remained silent regarding the error in Respondent's First Form 872. Petitioners gave no consent, either expressed or implied, for respondent's alteration of Respondent's First Form 872. We also note that the very existence of respondent's March 4, 1986, cover letter to petitioners and of Respondent's Second Form 872 that was prepared by respondent and mailed to petitioners establishes that respondent timely discovered the error in Respondent's First Form 872 and that respondent, at least as of March 4, 1986, was not relying on Respondent's *88 First Form 872 that petitioners had signed. Respondent, after discovering the error on or before March 4, 1986, prepared and requested petitioners to sign Respondent's Second Form 872. The signing by respondent's representative, just 4 days later (on March 8, 1986), of Respondent's Altered Form 872 without waiting for a reply from petitioners to respondent's March 4, 1986, letter and without obtaining petitioners' consent to make the alteration is inexplicable. The equitable relief granted by the Court in Woods v. Commissioner, 92 T.C. 776 (1989), is not available to respondent in this case. Here, there was no "meeting of the minds" reflected in the various Forms 872 that the parties exchanged, or otherwise. The objective facts in this case indicate that the parties never reached an agreement with regard to the extension of the period of limitation for 1982. On December 28, 1987, respondent issued the notice of deficiency involved in this case, after the May 20, 1986, expiration of the period of limitation on assessing a tax deficiency against petitioners for 1982. We will grant petitioners' motion for summary judgment, and we will deny respondent's *89 cross-motion for partial summary judgment. An appropriate order and decision will be entered.