JOSEPH J. AND BONNIE L. CORRADO, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Corrado v. Commissioner
Docket Nos. 607-89, 608-89, 609-89, 610-89
United States Tax Court
T.C. Memo 1991-278; 1991 Tax Ct. Memo LEXIS 321; 61 T.C.M. (CCH) 2944; T.C.M. (RIA) 91278; June 20, 1991, Filed *321 Thomas B. Rutter, for the petitioners. Russell K. Stewart, for the respondent. COLVIN, Judge. COLVIN
MEMORANDUM FINDINGS OF FACT AND OPINION These cases are before the Court on petitioners' motion for summary judgment. The issue for decision is whether the notices of deficiency were timely issued. To be timely, they must have been issued within 90 days after petitioners revoked their consent to extend the time for assessment and collection of tax (Form 872-A). Revocation of a Form 872-A is done by use of a Form 872-T. We conclude that petitioners did not properly serve the termination of the Form 872-A on respondent on July 26, 1988, the date it was delivered to a reception room at the Internal Revenue Service offices in Wilmington, Delaware, because petitioners did not address the form to the "Chief, Examination Division," as required by the Form 872-T. Accordingly, we hold that the notice of deficiency was timely issued. Respondent determined deficiencies and additions to tax as follows: *322 Joseph J. and Bonnie L. Corrado
Docket No. 607-89
Additions to Tax
Section
Section
Section
Year
Income Tax
6653(a) (1)
6653(a) (2)
6661
1982
$ 6,667
$   334
*
$ 1,669
1983
24,572
1,229
*
6,142
Frank L. and Evelyn Corrado
Docket No. 608-89
Additions to Tax
Section
Section
Section
Year
Income Tax
6653(a) (1)
6653(a) (2)
6661
1982
$  5,861
$   293
*
$ 1,466
1983
24,099
1,205
*
6,025
Joseph S. and Mafalda Corrado
Docket No. 609-89
Additions to Tax
Section
Section
Section
Year
Income Tax
6653(a) (1)
6653(a) (2)
6661
1982
$ 14,676
$ 734
*
$ 3,669
1983
34,951
1,748
*
8,738
Corrado Brothers, Inc. and Subsidiary
Docket No. 610-89
Additions to Tax
Section
Section
Section
Year
Income Tax
6653(a) (1)
6653(a) (2)
6661
1982
$ 224,526
$ 11,226
*
$ 56,132
1983
46,611
2,331
*
11,653
Petitioners in each docket submitted motions to dismiss for lack of jurisdiction, which the Court filed as motions for summary judgment under Rule 121. Respondent disputed some of petitioners' statements of facts which were essential to the resolution of the issue, and an evidentiary hearing was held. For purposes of the motion for summary judgment, our findings of fact are deemed to constitute the undisputed facts. See Estate of Lauder v. Commissioner, T.C. Memo 1990-530. The cases were consolidated for trial, briefing, and opinion. All section references are to the Internal Revenue Code of 1954 as amended and in effect for the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure. FINDINGS OF FACT 1. Petitioners
When the petitions were filed, petitioners Joseph J. and Bonnie L. Corrado and Joseph S. and Mafalda Corrado resided in Kennett Square, Pennsylvania. Petitioner Corrado Brothers, *323 Inc., is a Delaware corporation with its principal place of business in New Castle, Delaware, when its petition was filed. Petitioner Joseph S. Corrado owns 100 percent of the corporation's preferred stock. Petitioners Joseph J. and Frank L. Corrado each own 50 percent of the corporation's common stock. The tax years at issue are the years ending December 31, 1982, and December 31, 1983. Petitioners timely filed their Federal income tax returns for 1982 and 1983. 2. Examination of Petitioners' Tax Returns
An examination of the Federal income tax returns of petitioners for 1982 and 1983 was conducted by Revenue Agent Lamar S. Kaufman. He was employed by the Internal Revenue Service in the Examination Division in the Wilmington District Director's office at 844 King Street, Wilmington, Delaware. Kaufman reported to the Chief, Examination Division, Wilmington. Peter A. Horty, C.P.A., acted as petitioners' agent before the Internal Revenue Service with respect to its consideration of the tax returns for 1982 and 1983 pursuant to duly executed and filed powers of attorney. Before Agent Kaufman completed the examination, petitioners and respondent timely entered into Special *324 Consents to Extend the Time to Assess Tax for 1982 and 1983 (Forms 872-A). The Forms 872-A all state: "E:1003:LGK." The Forms 872-A provided in pertinent part as follows: (1) The amount(s) of any Federal Income tax due on any return(s) made by or for the above taxpayer(s) for the period(s) ended December 31, 1982 [or December 31, 1983] may be assessed on or before the 90th (ninetieth) day after: (a) the Internal Revenue Service office considering the case receives Form 872-T, Notice of Termination of Special Consent to Extend the Time to Assess Tax, from the taxpayer(s); * * *
Around May 25, 1988, Revenue Agent Kaufman completed his examination of petitioners' tax returns for 1982 and 1983. Copies of his reports were sent to petitioners and Mr. Horty. The reports proposed adjustments for petitioners' tax liability for 1982 and 1983. The letters bore reference symbols and named a person to contact and a return address. The return address was 844 King Street, Wilmington, Delaware. The letters stated: "In Reply Refer to: ESPU: 30 day." 3. Petitioners' Protest of the Proposed Adjustments
On June 22, 1988, Mr. Horty, acting on behalf of petitioners, timely protested *325 the proposed adjustments in part and submitted payments for the unprotested adjustments. At that time there were appeals officers based in Wilmington. They were under the jurisdiction of the appeals office in Philadephia. In late July or early August 1988, oversight of the Wilmington Appeals office was transferred from Philadelphia to Baltimore. On June 22, 1988, the protest letters and payments were hand delivered to the Internal Revenue Service at 844 King Street, Wilmington, Delaware, and date/time stamped. Three of the four protests were addressed to the "District Director, Internal Revenue Service, 844 King Street, Philadelphia, Pennsylvania 19801." The reference to "Philadelphia, Pennsylvania" was a mistake, but the zip code was correct. The fourth protest letter properly stated "Wilmington, Delaware." The letters contained no reference symbols. Each protest requested a conference with Appeals. The checks submitted as payment with the protest letters were negotiated and the proceeds were collected by the Internal Revenue Service. The June 22, 1988, letters were forwarded from the Wilmington District Director's office to the Examination Control Unit of the Philadelphia *326 Service Center on July 8, 1988, and were forwarded with petitioners' administrative files to the Appeals Division in Philadelphia. They were received in the Philadelphia Appeals Division on July 22, 1988. Petitioners were not notified about the transfer to Philadelphia until around August 21, 1988. The June 22, 1988, letters were not delivered to the Examination Division in Wilmington. The letters did not contain reference symbols. At that time, petitioners' administrative files were controlled by the Examination Support Unit located in the office of the District Director, Philadelphia. On July 8, 1988, petitioners' administrative files were transmitted from the Wilmington, Delaware, District Office to the Appeals Division in Philadelphia, Pennsylvania, and were received there on July 22, 1988. 4. Submission of Forms 872-T by Petitioners
On July 25, 1988, Mr. Horty prepared Forms 872-T, Notice of Termination of Special Consent to Extend the Time to Assess Tax, on behalf of each petitioner for 1982 and 1983. The instructions on the Forms 872-T provided in pertinent part as follows: If the tax return(s) to which this notice applies is under consideration by the *327 Examination Division, mail this notice to the District Director of Internal Revenue having jurisdiction over the return(s), Attention: Chief, Examination Division. * * * If the tax return(s) to which this notice applies is under consideration by Appeals, mail this notice to the Chief, Appeals Office, having jurisdiction over the return(s).
On July 26, 1988, the Forms 872-T were hand delivered to the IRS Taxpayer Services reception area on the second floor at 844 King Street, Wilmington, Delaware. The IRS did not occupy the first floor, but had offices on the second and third floor. The second floor had a reception area for people with business with the IRS. The Taxpayer Service Division is located on the second floor, and maintains the second floor reception area. It is not part of the Examination Division. The Examination Division is located on the third floor. The Examination Division uses the second floor reception area to meet people who have made appointments and also receives visitors and correspondence on the third floor. At that time there were also appeals officers in Wilmington that reported to Philadelphia. The Forms 872-T were not accompanied by a cover *328 letter or envelope directing them to the Chief of the Examination or Appeals Division, or reference symbols indicating where they were to be delivered. The Forms 872-T were hand delivered to the second floor reception area by Margaret Hudak. Ms. Hudak had been an employee of the Internal Revenue Service at 844 King Street in Wilmington from 1979 to 1985 and was employed by Mr. Horty from March to September 1988. Ms. Hudak knew that the second floor reception area was staffed by Taxpayer Service Division personnel and also used by the Examination, Collection, and Appeals Divisions in Wilmington. She believed that was the correct place to take documents for delivery to the IRS. She was not instructed to take it to or mark it to the attention of the Examination Division. At the time of the filing by Ms. Hudak, the IRS representative in Wilmington date-time stamped the forms 872-T as follows: "1988 July 26 A.M. 10:35 (approximate time) Internal Revenue Service, Philadelphia District." The IRS in Wilmington later changed to a stamp that reads "Wilmington District." When a document is delivered to the Taxpayer Service Division reception area on the second floor, Taxpayer Services *329 staff looks for identification on the document as to whom it should be forwarded. The bulk of their receipts, such as returns, requests for extension of time to file, and other miscellaneous forms, go the Philadelphia Service Center. They also periodically receive envelopes addressed to various functions within the Internal Revenue Service. If the envelope is sealed, they leave it sealed, date stamp the envelope, and telephone the person whose name is on the envelope to pick it up. If the envelope is open and a request for an acknowledgment is received, they acknowledge what they can see. If a document arrived with no address other than IRS or District Director, the taxpayer's copy was stamped and the file copy was sent to the Technical Support Unit, which is responsible for identifying where it should go. If either a sealed or unsealed envelope addressed to the Examination Division was delivered, the reception room staff arranged for it to be delivered to the Examination Division. The Examination Division in Wilmington, Delaware, never received petitioners' Forms 872-T. When Mr. Horty needed to deliver a document to the IRS in Wilmington he customarily had it delivered to *330 the Taxpayer Service Division reception room on the second floor at 844 King Street, where it was filed and date-stamped. He followed this procedure with respect to the filing of documents such as extensions of time within which to file tax returns, tax returns, tax payments, Forms 872, and protests. The Forms 872-T were forwarded to the Philadelphia Service Center on or about August 2, 1988. The forms were received at the Philadelphia Service Center Examination Support Unit on August 10, 1988. Around August 21, 1988, Appeals Officer David Davis mailed appointment letters offering a conference to Mr. Horty. That is when petitioners were first notified that their tax returns were under consideration by Appeals at the Philadelphia Appeals Office. The Forms 872-T were forwarded to the Examination Division in Baltimore, and received there on August 29, 1988. The Examination Division in Baltimore controls all Federal tax returns under the jurisdiction of the Appeals Office located in Wilimington, Delaware. On or about August 29, 1988, Mr. Davis received a telephone call from Baltimore notifying him that Forms 872-T had been filed. Mr. Davis received the Forms 872-T sometime around *331 Labor Day 1989. The forms bore the date/time stamp placed by the Taxpayer Services Division in Wilmington on July 26, 1988. On October 26, 1988, respondent issued the notices of deficiency to petitioners. That date is 92 days after July 26, 1988, the date on which the Forms 872-T were received by the IRS in Wilmington, and 58 days after August 29, 1988, the date the Forms 872-T were received by the Examination Division of the Internal Revenue Service in Baltimore. OPINION The issue for decision is whether the notices of deficiency were timely issued. This depends on whether petitioners effectively terminated their Special Consent to Extend The Time to Assess Tax (Forms 872-A) on July 26, 1988. If so, the notices of deficiency were mailed to petitioners late and the actions would be barred by the statute of limitations. Petitioners contend that the Internal Revenue Service office considering their returns received the Forms 872-T on July 26, 1988, and that, consequently, the notice of deficiency issued on October 26, 1988, is untimely because it was issued 92 days after delivery of the Form 872-T. Petitioners contend that delivery to the Taxpayer Services reception room constituted *332 receipt by the IRS office considering the case for purposes of the 90-day period for assessment of tax provided on the Forms 872-A. Respondent argues that delivery to the Taxpayer Services reception room was not sufficient, absent meeting the requirement stated on the Form 872-T to address the forms to the Chief, Examination (or Appeals) Division. Thus, respondent argues that the 90-day period for respondent to issue the notice of deficiency commenced on August 29, 1988, when the Appeals Division in Philadelphia received the documents. We hold for respondent and deny petitioners' motions for summary judgment. A taxpayer's consent to extend the period of time for assessment of an income tax beyond the statute of limitations is a unilateral waiver of a defense. The agreement is not a contract. Grunwald v. Commissioner, 86 T.C. 85, 89 (1986); Piarulle v. Commissioner, 80 T.C. 1035, 1042 (1983). However, contractual principles are significant, since section 6501(c)(4) requires that the parties reach a written agreement as to the terms of the extension. Grunwald v. Commissioner, supra; Piarulle v. Commissioner, supra. *333 The Forms 872-A in this case state that respondent may assess the tax on or before 90 days after "the Internal Revenue Service Office considering the case receives Form 872-T * * * from the taxpayer(s)." Rev. Proc. 79-22, 1979-1 C.B. 563, directs taxpayers to "sign and mail Form 872-T in accordance with instructions contained on the form." The instructions to Form 872-T provide that, if the taxpayer's return is being considered by the Examination Division, the taxpayer address Form 872-T "to the District Director of Internal Revenue having jurisdiction over the return(s), Attention: Chief, Examination Division." Analogous instructions apply if the return is under consideration by respondent's Appeals Division or Employee Plans and Exempt Organization Division. The purpose of such specific instructions is to give respondent 90 days to consider the case after receiving actual notice that the time for assessment is no longer open-ended. Burke v. Commissioner, T.C. Memo 1987-325. We have addressed this issue in four previous cases, all of which were cited by the parties. Hale v. Commissioner, T.C. Memo 1988-271; *334 Burke v. Commissioner, supra; Freedman v. Commissioner, T.C. Memo 1986-257; Valk v. Commissioner, T.C. Memo 1984-622. The parties do not disagree as to the law. Rather, they disagree as to the application of the law to the facts of this case. Petitioners rely on Freedman v. Commissioner, supra, where the taxpayers delivered a Form 872-T marked "District Director of Internal Revenue, Attn: Chief Examination Division" to a suboffice of the District Director. Respondent argued that the returns were not being considered at the suboffice, but rather at the office of the District Director located in a different building and that the suboffice was not the office considering the case. Respondent conceded that hand delivery rather than mail to the main office would have been acceptable. We held that the term "office considering the case" as stated on the Form 872-A "refers to the Office of the District Director for the proper district, and not the specific office building at which the return is actually being considered." T.C. Memo 1986-257, 1986 Tax Ct. Memo LEXIS 351, 51 T.C.M. (CCH) 1264, 1265, T.C.M. (RIA) 86257 at 1089. *335 Freedman v. Commissioner, supra, is distinguishable from the instant case because the taxpayers in Freedman delivered the Form 872-T to the Office of the District Director for the proper district, albeit the incorrect specific building, and addressed it to "District Director of Internal Revenue, Attn: Chief Examination Division" as required by the instructions on the form. Petitioners in this case did not mark or address their Forms 872-T to the attention of the Chief, Examination (or Appeals) Division. We believe that the facts of the case before us have important similarities to Burke v. Commissioner, supra. In that case, a Form 872-T was hand delivered by the taxpayers' attorney to the Chicago District's Collection Division Teller Unit on May 10, 1985, without directions that it be routed to the Examination Division, where the taxpayers' return was being considered. It eventually made it to the Examination Division on July 9, 1985, after being routed to a Service Center and an Appeals Office. The notice of deficiency was issued within 90 days of its receipt by the Examination Division but more than 90 days after it was hand *336 delivered to the Collection Division Teller Unit. We stated that the taxpayers caused their own predicament by failing to properly address the form and held that the statute of limitations had not expired. As in the instant case, Freedman v. Commissioner, supra, was distinguished. Further, it is often difficult for a taxpayer to know what office is actually considering the return when the Form 872-T is mailed or delivered. Under the facts of this case, as of July 26, 1988, respondent had transferred the case from the Examination Division to Appeals, but had not notified petitioners. Thus, if petitioners had directed the Form 872-T toward either the Examination Division or the Appeals Division, their revocation of their consent to extend the time for assessment and collection of tax would have been effective. In the instant case, we believe that petitioners caused their own predicament by not addressing the Forms 872-T as required by the instructions on the form. To avoid situations such as that before us, "meticulous compliance by the taxpayer with all named conditions" is necessary to start the running of the statute of limitations on assessment. Lucas v. Pilliod Lumber Co., 281 U.S. 245, 249, 74 L. Ed. 829, 50 S. Ct. 297 (1930). *337 On these facts, petitioners have not met this standard. An appropriate order will be issued. Footnotes
1. Cases of the following petitioners are consolidated herewith: Frank L. and Evelyn Corrado, docket No. 608-89; Joseph S. and Mafalda Corrado, docket No. 609-89; and Corrado Brothers, Inc. and Subsidiary, docket No. 610-89.↩
*. 50% of the interest due on the income tax deficiency.↩